Argued at Pendleton October 28; affirmed November 13; rehearing
denied December 9, 1941

# BOISE PAYETTE LUMBER CO. *v.* NATIONAL
# SURETY CORPORATION

(118 P. (2d) 1066)

Before KELLY, Chief Justice, and BELT, BAILEY, LUSK, RAND and BRAND, Associate Justices.

*P. J. Gallagher*, of Portland (Gallagher & Gallagher, of Portland, on the brief), for appellant.

*C. E. Wheelock*, of Portland (Wheelock & Wheelock, of Portland, on the brief), for respondent.

KELLY, C. J.  On or about November 28, 1934, Nels Rasmussen died intestate in Malheur county, Oregon, possessed of an estate consisting of real and personal property of the value of $8,000. Said decedent left surviving him as his only heirs at law, J. F. Rasmussen, a brother, and Christine E. Neilsen, Johanne Jensen and Dorrothea Christensen, sisters, of said deceased.

On or about November 1, 1934, said J. F. Rasmussen was appointed as administrator of said decedent's estate; and on or about November 7, 1934, said J. F. Rasmussen filed his oath of office as such adminis-

trator and a surety bond executed by defendant on or about November 3, 1934, by the terms of which bond defendant, for a valuable consideration, contracted and agreed that said J. F. Rasmussen, as such administrator, would faithfully perform the duties of his trust according to law.

On November 22, 1934, said Rasmussen, as such administrator, filed an inventory and appraisal of the assets of said estate with the county clerk of Malheur county, Oregon, showing that as such administrator he had received real and personal property of the value of $8,362.87.

That on or about November 2, 1937, said J. F. Rasmussen was indebted to plaintiff for goods, wares and merchandise which had been sold to said Rasmussen by plaintiff upon which there was a balance due to plaintiff in the sum of $1,050.

That on or about December 30, 1937, for the purpose of securing to plaintiff the sums of money due and owing to plaintiff said J. F. Rasmussen made, executed and delivered to plaintiff a written assignment, a copy of which, omitting the notarial certificate of acknowledgment, is as follows:

"In the County Court of the State of Oregon in and for Malheur County.

In the matter of the estate of Nels Rasmussen, deceased.

Probate No. 899
Assignment of interest in estate and of distributive share.

Know all men by these presents: That I, J. F. Rasmussen, do, for and in consideration of one dollar and other considerations grant, bargain and sell, assign and set over unto Boise-Payette Lumber Company, a corporation, all of my right, title and estate to, in and of the estate of Nels Rasmussen, deceased, and I do hereby authorize the County Court of the State of

Oregon, in and for the County of Malheur, to make distribution to said corporation of all my interest in the property of said estate to which I would, but for this assignment, be entitled, and I do further hereby waive any and all proceedings which may be conducted with the administration of said estate and time for appearance or contest therein.

To have and to hold the same to said Boise-Payette Lumber Company its successors and assigns forever.

J. F. Rasmussen.''

On October 13, 1938, the said J. F. Rasmussen, administrator of the estate of Nels Rasmussen, deceased, filed his final account showing that he had taken into his possession real and personal property belonging to the said estate of the value of $10,615.87. That he had paid out of said estate because of creditors, taxes and expenses of administration, the sum of $1,837.41; and that there were further anticipated expenditures necessary to be made in the sum of $520.77, leaving the estate then in possession and control of J. F. Rasmussen as said administrator, after such expenditures were deducted, of $8,257.69, of which amount there was cash on hand in the sum of $6,483.69. That the said J. F. Rasmussen, as such administrator, caused notice of settlement of such final account to be published according to law for five successive weeks, including six publications thereof. Thereafter on the 31st day of July, 1939, the county court of Malheur county, acting by the Honorable David F. Graham, County Judge, made and entered its order, wherein said final account was approved, and wherein,

''it was further ordered that said J. F. Rasmussen, as administrator of the estate of Nels Rasmussen, deceased, be and he is hereby ordered and directed forthwith to make distribution of the assets of said estate to the heirs at law of the said deceased entitled thereto.''

That in violation of his trust as such administrator the said J. F. Rasmussen refused and neglected to make distribution of the funds in his possession as such administrator and because of such violation the said J. F. Rasmussen was, by order of the county court of Malheur county, made on the first day of August, 1939, removed as administrator of the estate of the said Nels Rasmussen, deceased. That the said J. F. Rasmussen, as such administrator, in further violation of his trust, neglected and refused to pay over, or deliver to his successor administrator, any part of the funds which he held as administrator of the estate of Nels Rasmussen, excepting one Ford coupe of the value of $40, and a small amount of real property situated in Malheur county, Oregon, of the approximate value of $1,000, and failed, refused, and neglected to deliver any other or further part of the money, property, or assets to such successor administrator, or the heirs of the said Nels Rasmussen, or to his assignee of the said J. F. Rasmussen. That out of the value of said real estate so delivered to the successor administrator, this plaintiff recovered the sum of $175 and no more, and that by reason of the facts aforesaid, this plaintiff has been unable to collect the sums due it, by reason of said assignment in the amount of $1,133, together with interest thereon at the rate of six per cent per annum from the 8th day of November, 1939.

That upon the removal of said J. F. Rasmussen, as administrator as aforesaid, the county court of Malheur county appointed one Sherman Harkson as administrator de bonis non of said estate of Nels Rasmussen, thereupon authorizing and directing the said Sherman Harkson to institute appropriate proceedings against the said J. F. Rasmussen, and the defendant

herein, as his surety, for the amounts of money withheld by said J. F. Rasmussen, but the said Sherman Harkson, as such administrator de bonis non, has failed to institute such or any action for such recovery and has heretofore filed his final account and has been discharged as such administrator de bonis non.

Upon the foregoing facts plaintiff demands judgment against defendant, surety company, in the sum of $1,133 and interest together with a reasonable sum as attorney's fees.

As stated, the trial court sustained a general demurrer to plaintiff's amended complaint which complaint, in addition to alleging the foregoing facts, also alleged the corporate capacity of the parties plaintiff and defendant.

The first question before us is, what subject matter or res was assigned by the written assignment in suit?

It is described in the instrument as "all my right title and estate to in and of the estate of Nels Rasmussen, deceased," and the authority given to the county court was "to make distribution to said corporation of all my interest in the property of said estate to which I would, but for this assignment, be entitled.".

This can mean only that the property assigned consisted of such portion as J. F. Rasmussen would have been entitled to receive upon the final distribution of the distributive assets of the estate, if the written assignment had not been executed.

■■ It is evident from the amended complaint that J. F. Rasmussen withheld assets belonging to the estate consisting of cash on hand of value in excess of the value of his distributive share.

"To the extent of his indebtedness withheld from the estate by the legatee or distributee, the distributive share or legacy of the debtor, is regarded as having

béen paid, and his claim upon the estate satisfied pro tanto, and where the amount of the indebtedness of the distributee or legatee exceeds the value of the legacy or distributive share, it extinguishes his title to the property of the estate in the hands of the executor or administrator available for distribution." *Stanley v. United States Nat. Bank,* 110 Or. 648, 224 P. 835.

"It is universally held that the assignee of a legacy or distributive share, whether with or without notice of the legatee's or distributee's indebtedness to the estate, takes subject to existing equities, and is in no better situation than his assignor would have occupied had the assignment not been made." Ibid.

To the same effect see: Vol. 21, American Jurisprudence, Subject, Executors and Administrators, p. 641, sec. 463, note 17; Vol. 3, Woerner, The American Law of Administration, (3d Ed.) sec. 563, p. 1923, note 6; Annotation, 123 A. L. R. p. 1320, at p. 1323; Vol. 1, Restatement of the Law of Trusts, sec. 251d and sec. 257d; *In re King's Estate,* 174 Misc. 937, 22 N. Y. S. 2d 258.

"Thus in Clapp v. Meserole, (1864) 1 Abb. App. Dec. (N. Y.) 362, affirming (1863) 38 Barb. 661, it was held that an assignment of their legacies by executors, prior to a devastavit, does not preclude the amount charged against them from being deducted from the amount of their legacies, the court saying: 'It is sufficient answer that these legatees, after the death of the testator, became possessed, as executors, of all his personalty, and under trusts of the will, were entitled to receive the rents and profits and proceeds of the sales of the whole real estate. Being both executors and legatees, the realization of their legacies depended upon the faithful performance of the trust, and it was not possible for the legatees to separate the interest from the duty. They could not convey away the former, and then waste the assets with which it should have been paid. The duty which attached to the legacy in

the hands of the legatees followed it into the hands of the appellant.'' Annotation, 1 A. L. R. p. 1032.

Plaintiff urges that the principle, above quoted, involves the doctrine of retainer or setoff and may not be invoked in aid of a general demurrer. Plaintiff's amended complaint contains a statement of the facts to which the principle applies; and, in determining whether plaintiff has a cause of action in the light of these facts, that principle is controlling.

■■ As stated, it is alleged in plaintiff's amended complaint that out of the value of the real estate, delivered to the administrator, de bonis non, plaintiff received $175 and that the final account of said administrator, de bonis non, was filed and said administrator discharged. This clearly shows that the county court has approved said final account and ordered a distribution of the distributive assets in accordance therewith. This the county court had authority to do. Vol. 2, O. C. L. A., section 13-501. The weight of authority is to the effect that the right to deduct the amount of an administrator's defalcation from his distributive share may be asserted in a court of probate. Annotations, Vol. 1, A. L. R. p. 998, 30 A. L. R. p. 777, 75 A. L. R. 879 and 110 A. L. R. p. 1384.

■■ As well said by the learned trial judge:

''J. F. Rasmussen has had his distributive share by converting to his own use funds in his hands belonging to the estate. The funds which the plaintiff seeks to recover in this case are for the purpose of paying the debt of J. F. Rasmussen in the sum of $1,050.00. The mere statement of the facts shocks the conscience of the court. The plaintiff's position is that even though J. F. Rasmussen has wrongfully converted the assets of this estate that his surety should be compelled to

pay on behalf of J. F. Rasmussen and for the payment of his debt $1,050.00.

"If J. F. Rasmussen has wrongfully paid this money to someone other than himself, it would simply have been charged against his share and nothing would have become due Rasmussen on which the assignment could operate. The fact that he wrongfully paid it to himself should not change the rule. His share has been paid. The money was in his hands as trustee and when wrongfully applied is charged to his interest in the estate.

"As alleged in the complaint, J. F. Rasmussen had this money in his hands. He refused to make distribution to the heirs and his assignee. He refused to pay the money to the administrator de bonis non. His interest in the estate is cancelled to the extent of his defalcation. Nothing ever became due J. F. Rasmussen from the estate on which the assignment can operate because he converted its assets to his own use greater than his interest in the estate. Stanley v. United States National Bank, 110 Or. 648, 21 American Jurisprudence, Executors and Administrators, § 455, 1 A. L. R. 1005.

"Where a trustee who is also a beneficiary is a defaulter, the amount of the default is a first claim on his beneficial interest even when he has assigned the beneficial interest before default. Doering v. Doering (Eng.) 42 Chancery Div. 203; In re Hart's Estate, 53 A. 373."

*State v. Brown*, 170 Md. 97, 183 A. 256, cited by plaintiff, is a case wherein two nieces of deceased were named as legatees in the decedent's will. E. Kirk Brown was appointed administrator *cum testamento annexo* and failed to pay the legacies thus bequeathed to decedent's nieces. The action was brought upon the administrator's bond by the state on the relation of the nieces. The court of appeals held the complaint invulnerable to demurrer. The nature of an assignment executed

by a distributee, who has defaulted as administrator, is not involved in the Maryland case above mentioned.

*Bellinger v. Thompson*, 26 Or. 320, 37 P. 714, also cited by plaintiff, is an action instituted by the guardian of minor children of deceased against the bondsmen of the executor of the decedent's estate. No assignment by a distributee was involved.

So too, in *Pinkstaff, et al. v. The People, Etc.*, 59 Ill. 148, no such assignment was involved.

The judgment of the circuit court is affirmed.