32

In the Matter of the Accounting of CORTEZ D. EATON, as Executor of ALPHONZO D. V. EATON, Deceased, Appellant. EARL T. MAXON, Respondent.

Third Department, May 13, 1953.

*Theodore Fenstermacher* and *Clayton R. Lusk* for appellant.

*John J. Gardner* for respondent.

IMRIE, J. The executor is appealing from a decree of the Cortland County Surrogate's Court settling his account as the executor of the last will and testament of his father, Alphonzo D. V. Eaton, who died May 3, 1923. The will, admitted to probate May 25, 1923, gave to testator's widow the use of all his estate during her lifetime and the remainder, except for a small sum for the care of his burial lot, in equal shares to his children, Cortez De Ver Eaton (executor), Wesley Paul Eaton, Bennie K. Eaton and Alice M. (Eaton) Mitchell. The account was filed following the death of the life beneficiary.

At the time of testator's death he held valid and enforcible notes of his three sons, totaling $1,588.37. One was a note of Cortez D. for $100 (paid prior to the accounting proceeding), one of Wesley P. for $40, and four of Bennie K. for a total of $1,448.37. In his account the executor proposed to offset the note indebtedness of Wesley and Bennie against their distributive shares.

On May 1, 1925, Bennie K. Eaton had delivered to the executor his note in the amount of $1,448.37 to replace and consolidate the four original notes. Payments of interest, though not in full, were made until July 5, 1935. On June 1, 1936, by two separate instruments, he acknowledged his indebtedness to the estate for the above principal amount and for $795.30 unpaid interest, and consented that any portion of the indebtedness remaining unpaid at his mother's death could be deducted from his share of his father's estate. At the hearing before the Surrogate-designate he testified that shortly before his father's death he had asked his father if he needed the money which was owing to him, to which the father replied, "I would rather have you have the money now and I will not need it." His father then told him about the will he had made and said that the indebtedness would be deducted from his share.

Bennie Eaton moved to Florida in 1926 and has resided there continuously, except for a few months in 1947. He then owed respondent Maxon $700 on an open feed account. By letter of January 1, 1928, to the latter (received in evidence) he told of his indebtedness of $1,448.37 to his father's estate and estimated his net interest in the estate, over such indebtedness, as somewhat in excess of $1,000. He also said that, besides his debt to the estate and to Maxon, he owed about $1,300; that his bankruptcy would leave nothing for anyone and proposed

giving Maxon an assignment of his interest in the estate providing Maxon would give him a receipt in full and the sum of $300. He testified, without denial, that Maxon accepted the proposal by letter. In June, 1928, Bennie Eaton executed and forwarded to Maxon an assignment of his entire interest in the estate. He never received from Maxon the receipt for the indebtedness or the additional $300.

Maxon, cited on the accounting, filed objections. A hearing was held before the Surrogate-designate, who made a decision holding the assignment to Maxon full, complete and irrevocable, awarding him a full quarter share of the estate without offset for Bennie Eaton's indebtedness to the estate, awarding the legal representative of Wesley Eaton, who died prior to the accounting, a full quarter share without offset for Wesley Eaton's indebtedness to the estate, and surcharging the executor $1,588.37 for failing to collect the various notes, including his own, which had been paid. The decree which is appealed from incorporated, *inter alia,* the above directions of the court.

As of the date of death and probate of the will of Alphonzo D. V. Eaton the notes of Bennie Eaton and Wesley Eaton were valid and subsisting claims and constituted assets of the estate. On the theory a legatee indebted to his testator already has in his hands a part of the fund or assets eventually to be distributed, there can be no doubt that this executor had the right to offset the above debts against the legacies of the respective debtors, unless some matter peculiar to this case were to compel a holding contrary to the usual rule.

"The right of the executor or administrator to retain the whole, or a part, of a legacy or distributive share, in discharge or satisfaction of a debt due from the legatee or distributee to the estate, is not only consistent with the soundest principles of equity, but is perfectly well settled." (*Smith* v. *Kearney,* 2 Barb. Ch. 533, 547; *Wright* v. *Austin,* 56 Barb. 13, 16, 17.) "The right of retainer and lien is equitable in its nature, is independent of statute and is distinct from the technical right of setoff in actions at law." (*Matter of Flint,* 120 Misc. 230, 231, 232, affd. 206 App. Div. 778.)

Maxon's position, as Bennie Eaton's assignee, is in no way superior to that of his assignor. It is an established rule that the assignee of a legacy or distributive share, whether with or without notice of his assignor's indebtedness to the estate, takes subject to existing equities, and is in no better situation than his assignor would have occupied had the assignment not been

made. "The consignees of the legatee, or distributee * * * take his legacy or distributive share subject to this equity [that is, the right of retainer or setoff], which existed against it in his hands." (*Smith* v. *Kearney*, 2 Barb. Ch. 533, 549, *supra; Commercial Bank of Rochester* v. *Colt*, 15 Barb. 506; *Clapp* v. *Meserole*, 38 Barb. 661, 665, affd. 1 Abb. Ct. App. 362.) Maxon clearly had notice of his assignor's debt to the estate. As the available funds of the estate are not sufficient to provide a distributive share for Bennie Eaton equal to his original principal indebtedness, we need not pass upon appellant's contention that the assignment to Maxon was invalid because of failure of consideration.

Under the earlier rule in this State which followed the English rule, an executor, in the absence of any provision in the will to the contrary, might assert the right of equitable retainer and lien against a debtor-legatee even though the latter's debt was barred by the Statute of Limitations (*Smith* v. *Kearney*, 2 Barb. Ch. 533, 548, *supra; Matter of Bogart*, 28 Hun 466; *Rogers* v. *Murdock*, 45 Hun 30). In *Kimball* v. *Scribner* (174 App. Div. 845) which was an action at law by a legatee against an executor for the recovery of a legacy it was stated (p. 847): "It would seem that there can be no longer any sound distinction in legal principle whether this question [as to the bar of the Statute of Limitations] arises in a Surrogate's Court in a proceeding to distribute an estate, or in an action at law to recover a legacy." The rule there laid down clearly applies to all debts of legatees which have been barred by the statute before the death of the testator. Since this testator's death, Bennie Eaton's absence from the State has tolled the running of the statute and though Wesley Eaton had remained a resident of the State, the statute is a personal defense which does not accrue to Maxon.

The executor testified as to his knowledge of the financial condition of Bennie and Wesley Eaton, that their notes could not be collected by civil action and that he "didn't think it was worth the money" to bring suit. Bennie Eaton's testimony as to his own situation is corroborative. Section 158 of the Decedent Estate Law provides that the executor or administrator shall not be charged with a demand or right of action, included in the inventory, unless it appears that the same has been collected, or might have been collected with due diligence. None of the interested parties, including Maxon himself, disputed the executor's testimony as to the uncollectibility of those debts. In the light of the testimony indicative of the uncollectibility

of the indebtedness of the two named legatees, there was no evidence sufficient to support the determination to surcharge the executor with the amount of the notes, including his own note, and denying him commissions.

Respondent relies solely on section 278 of the Surrogate's Court Act, as the basis for the allowance of $300 to his attorneys for their services to him in the proceeding. The allowance was not proper as a matter of discretion. (*Matter of Fromberg*, 281 App. Div. 1.)

The decree should be reversed, with costs to appellant, and the matter remitted to the Surrogate of Cortland County for proceedings in conformity with the foregoing.

FOSTER, P. J., BERGAN, COON and HALPERN, JJ., concur.

Decree reversed, on the law and facts, with costs to appellant, and the matter remitted to the Surrogate of Cortland County for proceedings in conformity with the opinion herein. [See *post*, p. 751.]